GEORGE FALES, Appellant, v. GILES F. FILLEY, Respondent.

### June 6, 1876.

Where a bond was delivered to A, signed by B, and not to be negotiated until also signed by A, and the fact that A's signature was essential to complete the instrument appeared on the face of the paper itself, a purchaser for value is held to be affected with notice of the agreement between A and B, and cannot recover in an action against B, if the bond is not also signed by A.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

*Cline, Jamison & Day*, for appellant, cited: Clamorgan *v.* Greene, 32 Mo. 285; Dickson *v.* Anderson, 9 Mo. 156; Lajoye *v.* Primm, 3 Mo. 530, 368; Durella *v.* Briggs, 47 Mo. 356; Joeckel *v.* Easton, 11 Mo. 118; St. Johns *v.* Roberts, 31 N. Y. 441; Big. on Estop. 459, 460.

*Glover & Shepley* and *Johnson & Wilson*, for respondent.

cited: Ayers v. Milroy, 53 Mo. 516; Mayors v. McMilly, 7 Heisk. 294; Flagg v. Palmyra, 33 Mo. 440; Henderson v. Bondurant, 39 Mo. 369, 374; Lovett v. Adams, 3 Wend. 380; Mercer County v. Hasket, 1 Wall. 92; Merriam v. Rockwood, 47 N. H. 81; Gaalor v. Matthews, 5 La. An. 496; McComas v. Greene, 6 La. An. 121; Pelcher v. Kerr, 7 La. An. 144.

BAKEWELL, J., delivered the opinion of the court.

It appears from the pleadings and evidence in this case that, on August 1, 1868, Giles F. Filley, the respondent, was liable, as accommodation indorser, to the amount of $800,000, on the paper of John How. To obtain an extension of time, How and Filley proposed to execute 250 bonds, of $1,000 each, all bearing interest at 9 per cent., with coupons, payable every six months, all payable at the National Bank of Commerce, New York, all dated August 1, 1868, and secured by 250 shares of Excelsior Manufacturing Company stock, owned by respondent, Filley, and assigned to trustees, with the power to sell on the non-payment of two or more bonds. These bonds were also guaranteed by Oliver D. Filley, and were payable, twenty-five on August 1, 1870; twenty-five on February 1, 1871, and so on, at half-yearly intervals, the last twenty-five maturing on February 1, 1875. These bonds were all sold, and the proceeds were applied to the payment of the indebtedness of How, for which the respondent, Filley, was liable. Of these bonds, eighty-four were sold in Philadelphia, by Robert K. Woods, thirteen of which were purchased of Woods by plaintiff. At the time of the sale, Woods represented himself as the agent of How and Filley for the sale of the bonds. There is evidence that he was the agent of How. There is no evidence that he was the agent of Filley. This suit is upon bond No. 114, of the series, being one of the thirteen bonds purchased by plaintiff of Woods. It is signed by respondent, but, by accident, How neglected to sign it. It purports, by its recitals, to be the bond of How and Filley. The coupons, for interest upon it, were all regu-

larly paid at maturity. But, when the bond matured, it was first discovered that How had never signed it, and respondent denied any liability upon the bond, declaring, as he declares in his answer, and as he proved on the trial, that the bond was signed by him and delivered to How upon the condition that it should not be negotiated until How had also signed it. Hence this action. The bond shows the name, "Giles F. Filley," opposite the last seal. No name is written opposite the other seal. The initials "J. H." are on the revenue stamp, but were not put there by John How, nor by his direction. It appears from the guaranty upon the back of the bond, signed by O. D. Filley, that John How and Giles F. Filley were both to execute the bond. When plaintiff purchased, he supposed the bond was signed by John How. It further appears in evidence that, at the date of the execution of these bonds, John How executed to respondent, Filley, a bond, in which he acknowledges the execution of the 250 bonds, including the one in suit, to save defendant harmless on account of these bonds.

There is no controversy whatever about the facts, except that plaintiff's counsel claim that Woods was the agent of How and Filley for the sale of the bond sued on. But in this they are wrong, for there is no evidence that Woods was the agent of Filley for this purpose. His statement to this effect, however honestly though mistakenly made, could not bind Filley. No exceptions were saved, on the trial, to the exclusion or admission of evidence.

Defendant asked two instructions, which were given. Plaintiff asked seven instructions, which were all refused. It is not necessary, for the purposes of this opinion, to set out these instructions. Those for defendant were to the effect that, if the bond sued on was signed by Filley, for the accommodation of How, and was delivered by Filley to How, on condition that it was not to be Filley's bond till signed by How, and was not to be used till so signed, and

if How did not sign it, but transferred it, and the instrument shows on its face that the parties to it intended that How should sign, plaintiff cannot recover; and, also, that, if respondent paid any coupon of the bond, without notice that How had not signed, such payment does not affect the question of Filley's liability on the bond. The instructions for plaintiff, as to some of them, set forth the material facts in evidence, and declare that, on these facts, plaintiff is entitled to recover. Some of the instructions asked for plaintiff assume, however, that Woods was agent of Filley; those that so assume are not supported by the evidence, and were correctly refused on that ground alone. If, however, the instructions given for defendant were correct, they fully covered the law applicable to the facts, and the question of the abstract correctness, as declarations of law, of any of the instructions refused becomes wholly immaterial.

There was a verdict and judgment for defendant, and, after the motion for a new trial had been overruled, all exceptions having been duly saved, the cause is brought here by appeal.

We are of opinion that no error to the prejudice of plaintiff's rights was committed by the Circuit Court in the trial of this cause, and that, upon the evidence, the plaintiff was not entitled to recover.

The bonds having been delivered to How, signed by Filley, and not to be negotiated until signed by How, and the fact that How's signature was essential to complete the instrument appearing upon the face of the paper itself, would, under ordinary circumstances, be fatal to a recovery by plaintiff, and this even if the bond-holder had no notice of the agreement between respondent and How. *Ayres* v. *Milroy*, 53 Mo. 516.

But is a liability on the part of defendant established by the fact that the proceeds of this bond went to pay an existing indebtedness of How for which respondent was liable? Why should this be? Filley promised to pay on certain

conditions, which were never fulfilled. That these conditions were never fulfilled is the misfortune of the purchaser of the bond, but not at all the fault of Filley. If, as is probable, the bond was bought on the faith of Filley's name, the purchaser should have been careful to see that Filley's name was there in such a way as to bind him. Of course, neither the plaintiff nor any prudent man would have touched the bond if the absence of How's signature had been remarked. Suppose that, instead of issuing bonds, How and Filley had paid How's paper by issuing new notes, made by How, indorsed by Filley; that these new notes had been sold, and the proceeds applied to the extinguishment of the old debt on which Filley was liable; will it be maintained that if, as to any one of the new series of notes, no steps had been taken to pay his liability as indorser, at the maturity of the paper, Filley would have been legally, or even morally, bound to pay such note, because the proceeds of it had been applied to extinguish the old debt in which Filley was formerly liable? Yet it seems that the cases are parallel. In the case supposed, Filley says, If How does not pay, and I have due notice, I will pay the note; in the case at bar he says, If How sign this bond, I will become jointly and severally liable with him upon it. The fact that the proceeds go to pay an existing liability of Filley for How appear in neither case, and in neither case do we think that it can be taken to create a liability on the part of the person making this conditional promise, where the condition precedent has not been fulfilled.

It is said that the execution of the indemnifying bond by John How estops him to deny the execution of the bond sued on in a suit by defendant against him for the amount. Grant it. It by no means follows that, because Filley could obtain judgment against How, plaintiff is entitled to judgment against Filley. The payee and accommodation indorser of a promissory note could recover against the

maker, if he chose to pay the holder and take up the note after he was released as indorser for want of notice ; but he is not bound to pay, for all that. His answer is, I made no such bargain ; *non hæc in fœdera veni*. And it is the answer of respondent in this suit, and we think it a conclusive one.

It is the laches of plaintiff that he bought this bond without any examination of the instrument. It turns out that How did not sign it. Filley agreed to pay it only on condition that How should sign, and that condition has not been fulfilled. Filley has made no false representation which has led plaintiff into this misfortune, and he is not responsible for it. It might have been that Mr. Woods had, by accident, delivered a blank paper by mistake, and that bond No. 114 was never printed, filled up, or signed at all. Filley's position would have been precisely what it now is. As the matter stands, plaintiff has recourse against How, as we are told Filley would have if he should be compelled to pay this bond.

The law presumes that plaintiff read this bond when he bought it, and affects him with the knowledge of all that appears upon its face. He is as fully affected with notice of the agreement between How and Filley, that the bond should not be sold until How had signed, as if he had heard every word that passed between them. On any theory, he knew enough to put him on his guard and to make further inquiry a duty, and if he neglected to read the bond, or, having read, cared nothing about the completeness of the instrument, the loss, if any, must now fall on him.

The judgment of the Circuit Court is affirmed. All the judges concur.